**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**Gulfport Division**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **Alliance Consulting Group, LLC,** | § | Case No. 13-51937-KMS |
| | § | |
| **Debtor** | § | |

## MOTION TO ABANDON

Richard W. Cryar, Chapter 11 Trustee ("Cryar" or "Trustee"), files this *Motion to Abandon* ("Motion"), and in support thereof respectfully states as follows:

### PRELIMINARY STATEMENT

1. The Trustee seeks to abandon the following assets of Alliance Consulting Group, LLC ("ACG") that are both burdensome to the estate and have no or inconsequential value to the estate: 100% membership interest in Sun Coast Contracting, LLC ("Sun Coast"); 100% membership interest in E-Co Systems, LLC ("E-Co"); 100% membership interest in Team Pro-Tree, LLC ("Pro-Tree"); and, 100% membership interest in Pro-Temp, LLC ("Pro-Temp").

### JURISDICTION

2. This is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(a), (b)(1), (b)(2)(a), and (b)(2)(O). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding brought pursuant to 11 U.S.C. §554(a) and Bankruptcy Rule 6007(a).

### FACTUAL BACKGROUND

3. On October 3, 2013 (the "Petition Date"), certain creditors of the Debtor (collectively, the "Petitioning Creditors") filed an involuntary petition against the Debtor to stay

the foreclosure of assets of ACG. On October 25, 2013, the Court entered its *Order for Relief in an Involuntary Case* [Docket No. 55].

4. On November 22, 2013, the Court entered its *Agreed Order Directing the Appointment of a Chapter 11 Trustee* [Docket No. 128]. On December 4, 2013, the United States Trustee filed its application for approval of Cryar as the Trustee in this case [Docket No. 132], which the Court granted on December 5, 2013 [Docket No. 139].

5. ACG is the sole member of the following Louisiana limited liability companies: Sun Coast; E-Co; Pro-Tree; Pro-Temp; H&H Trucking, LLC ("H&H"); Titan Rentals, LLC ("Titan"); and Locus Group, LLC ("Locus") (collectively "Subsidiaries").

6. Upon Cryar's appointment, he had multiple conversations with Ryan Hess ("Hess"), purportedly a manager of all the Subsidiaries and other representatives of the Subsidiaries, regarding the current operational status of each entity. In addition, Cryar was provided current financial statements of the Subsidiaries.

7. Based upon the Trustee's discussions with Hess, his discussions with other employees and agents of ACG, and a review of the financial statements, the Trustee determined the following:

    a. Sun Coast, E-Co, and Pro-Temp were the only entities that were operating as of and after the Petition Date;

    b. Pro-Tree was not operating and did not have any assets with equity;

    c. Locus was not operating but owned an vessel, which the Debtor's books and records asserted to be unencumbered, with significant value, the "Wayward Lady";

    d.  Titan was not operating but owned a substantial amount of heavy construction equipment, which the Debtor's books and records asserted to be unencumbered, with significant value; and,

    e.  H&H was not operating but owned a substantial amount of trucks, which the Debtor's books and records asserted to be unencumbered, with significant value.

8.    After his appointment and investigation, the Trustee believed it to be in the best interest of creditors and the estate to permit Sun Coast and E-Co to continue their operations since each was a party to several construction contacts which, if breached, might result in indirect liability of ACG; furthermore, the Trustee was informed and believed that those entities would at least break even or make a profit by continuing their operations.  Pro-Temp was stated to have only one employee, showed a positive equity position as of March 31, 2014, had minimal operations and was believed to supply casual labor to E-Co and Sun Coast; accordingly, the Trustee believed it to be in the best interest of creditors and the estate to permit Pro-Temp to continue its operations, at least until E-Co and Sun Coast had completed their current contracts.

9.    The Trustee then began investigating the viability and means for the other non-operating entities to dispose of their assets, pay their liabilities to legitimate creditors of each and provide additional funds to ACG for distribution to its creditors.

10.    Thereafter, the Trustee learned of certain actions of Hess apparently designed to mislead the Trustee, diminish the value of the Subsidiaries and thus their value to the estate of ACGH, divert the proceeds from the contemplated sale of the assets of H&H, Locus and Titan, and prevent the liquidation of certain assets of those entities.

11. On June 26, 2014, the Trustee executed corporate resolutions terminating all managers and operations at all Subsidiaries except Sun Coast and E-Co, and prohibiting any person other than the Trustee from taking any action against ACG or any other entities. Gerald Crump and Carl Boudreaux, managers at Sun Coast and E-Co, respectively, were permitted to remain as managers for the sole purpose of overseeing operations in those companies. Gerald Crump subsequently resigned as a manager at Sun Coast. Copies of the resolutions to the Subsidiaries ("Resolutions") are attached in globo as Exhibit "A".

### POST-PETITION ACTS LEADING TO ABANDONMENT

12. As stated above, upon completing his review of the financial statements and other investigations, the Trustee determined that it would be in the best interests of the estate to sell the unencumbered assets of Locus, Titan, and H&H. The sale of those assets would benefit the estate as the Trustee would be able to upstream the profits to ACG to provide additional funds for payment of administrative, priority, and unsecured claims.

**Locus**

13. The first asset the Trustee sought to liquidate was the Wayward Lady, a vessel which is believed to be owned by Locus. The Wayward Lady is a 217' quarters barge that was originally built as a casino barge. It contained living quarters for approximately 235 persons plus kitchen facilities. After inspection, the Trustee discovered that the kitchen equipment and quarters' equipment have been stripped from the vessel. The vessel was docked at Atlas Boats in Belle Chasse, Louisiana, which filed a proof of claim (claim #9) in this case in the amount of $109,600 for dock rental.[1] On or about March 17, 2014, the Trustee began seeking a sale of the Wayward

---

[1] The Trustee objected to this proof of claim on July 14, 2014 [Dkt. #613] based on the fact that the books and records of the Debtor do not show that the vessel was ever owned by ACG nor otherwise indicate that ACG should be held liable for that debt.

Page 4 of 10

Lady. Shortly thereafter, Cryar requested from Hess and other employees and agents of Hess all documents related to the Wayward Lady.

14. Initially, Hess indicated that he was in contact with potential purchasers and would try to get a sale on the vessel. Shortly thereafter, Hess told Cryar that he could immediately rent the vessel for a large profit and suggested that Cryar allow him to rent the vessel rather than sell it.

15. On May 8, 2014, the Trustee informed Hess that he intended to hire a broker to sell or auction the vessel as the Trustee did not believe a "negotiated sale" was in the best interests of Hess or the Trustee. Hess expressed concern regarding the broker fee and still sought a negotiated sale. Also, Hess still had not provided the information requested by the Trustee regarding the Wayward Lady.[2]

16. After May 8, 2014, the Trustee notified Hess that he wanted to inspect the vessel and asked for its location. On or about May 25, 2014, Hess told the Trustee that he could not inspect the vessel since it was being moved from Belle Chasse to Lafitte. A few days later, Hess told Cryar that boat was being moved to Pearl River instead of Lafitte. Despite written requests on May 28, 29 and 30, Hess would not provide the exact location of the vessel. Knowing that a proof of claim had been filed by Atlas Boats, the Trustee contacted Atlas Boats and was told that the vessel was docked at its facility and had never left the dock in Belle Chasse. Hess' misleading statements to Cryar regarding the vessel being moved to Lafitte and Pearl River can only be viewed as attempts to prevent the Trustee from selling the vessel. On June 2, 2014, the Trustee and Dennis Frantz ("Frantz"), the broker the Trustee is seeking to hire to sell the vessel, finally were able to inspect the vessel at Atlas Boats.

---

[2] See email dated May 8, 2014 attached as Exhibit "B".

17. On July 3, 2014, after the execution of the Resolutions, the Trustee learned that the Wayward Lady was no longer located at Atlas Boats and had been moved without the Trustee's authorization. On or about July 7, 2014, the Wayward Lady was "found" by the Trustee in Lafitte, Louisiana. After investigation, the Trustee learned that Hess signed, without the Trustee's knowledge, a mooring agreement on behalf of Locus with Tom's Marine & Salvage, LLC ("Tom's Marine") on June 5, 2014. Hess claimed that he moved the vessel since it was about to be seized.[3] The Trustee has never been provided any evidence supporting Hess' contention that a seizure of the vessel was imminent nor why moving it would prevent any seizure.

18. On July 11, 2014, AHG Solutions, LLC ("AHG"), a company owned by Hess' wife, Amber, and managed by Hess, sent bills to the Trustee totaling $45,000 for transportation of the Wayward Lady and dock rent for July and August, 2014. The Trustee has refused to pay those bills. The Trustee has the mooring agreement with Tom's Marine which supports the idea that Hess/AHG sought to profit from the transaction. Specifically, AHG sought to mark-up the mooring charges to ACG.

19. On June 10, 2014, the Trustee discovered that Locus began having activity in its checking account. Based on the financial statements provided to the Trustee and Hess' own representations, Locus had neither conducted any business nor had any employees since 2011.

20. Upon further investigation, the Trustee discovered that Hess directed funds be deposited into Locus' account to fund payroll for former employees of ACG and for other subsidiaries of ACG.[4] However, the federal and state withholding taxes were not remitted, creating

---

[3] See email dated July 8, 2014 attached as Exhibit "C"
[4] $59,000 was deposited in May, 2014 and $46,000 was deposited in June, 2014.

a tax liability for Locus.[5] In addition, the health insurance premiums withheld from the employees payroll checks were not remitted to Blue Cross.

**Titan**

21. The Trustee also sought to liquidate the heavy equipment owned by Titan. According to the information provided to the Trustee, Titan owned 32 pieces of unencumbered heavy equipment and barges.

22. An application to employ Henderson Auctions ("Henderson") was filed by the Trustee [Dkt. #570]. To the surprise of no one involved in this case, Hess has objected to the employment of Henderson [Dkt. #649].

23. The equipment owned by Titan was being stored at a yard in Belle Chasse, Louisiana. Upon information and belief, that yard was owned by Integrated Pro Services, LLC ("IPS"), a company owned by Hess and his brother, John Hess.

24. While Henderson and Cryar were inspecting the equipment, they discovered that certain equipment owned by Titan was not at the yard in Belle Chasse because it was "out on jobs". This included trucks and deck barges. In fact it was reported that the deck barges would be on location for another 2-3 months.

25. Upon further investigation, the Trustee discovered that the equipment is located in Plaquemines Parish and IPS has been leasing it to Fisher Sand & Gravel ("Fisher") since February, 2014. According to Fisher, a $30,000 setup fee was paid plus monthly rent of $9,000. As of this date, the Trustee does not know to whom the rental fees and setup fees were paid. Fisher's contact at IPS is Hess.

---

[5] The financial statements of Locus indicate debts for taxes and benefits of $55,700.

26.     A review of the most recent income statement of Titan shows no income in 2014 and its accounts receivable aging report does not show an accounts receivables less than 90 days old.[6]  H&H has not had a bank account since May, 2014.  The Trustee has requested information regarding the whereabouts of the rental fees, but no explanation has been provided.  Since it is evident that rental fees are not being deposited into a bank account of Titan, ACG or any other Subsidiaries, the rental income is being diverted to an entity or person not under the control of the Trustee.

**Sun Coast, E-Co, Pro-Tree and Pro-Temp**

27.     The Trustee directed Sun Coast to cease operations at the beginning of July, 2014, due to its inability to fund its operations.  At the time Sun Coast ceased operations, it had accrued withholding taxes in excess of $200,000 and valued its equity at -$4,339,798.

28.     The Trustee directed E-Co to cease operations on July 25, 2014, due to its inability to fund its payroll, including taxes and benefits.  At the time E-Co ceased operations, it had accrued withholding taxes in excess of $500,000 and valued its equity at -$1,342,179.

29.     According to the most recent financial statements, ProTree's equity is valued at -$258,759 and ProTemp's equity is valued at $ 438,001.  While the financial statements of Pro-Temp show equity to the member, that equity is based on a receivable in excess of $797,000 due from ACG and other subsidiaries of ACG.  Given the current financial position of ACG and the Subsidiaries, the Trustee does believe that receivable is collectible.  Therefore, the Trustee has determined that Pro-Temp's membership interest has no value to the estate.

---

[6] See Titan income statement and AR aging report attached as Exhibit "D".

## APPLICABLE LAW

30.     The trustee's power to abandon property from a bankruptcy estate is codified at 11 U.S.C. § 554(a).  "After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."

31.     Numerous courts have recognized that where the estate has no equity in a property, and the estate is to be liquidated, abandonment will virtually always be appropriate, because no unsecured creditor could benefit from its administration. In re Cunningham, 48 B.R. 509 (Bankr.M.D.Tenn.1985); Matter of Karl A. Neise, Inc., 31 B.R. 409 (Bankr.S.D.Fla.1983); In re Anspach, 13 B.R. 208 (Bankr.E.D.Pa.1981); In re Brannan, 5 B.R. 505 (D.V.I.1980). See also In re Air Vermont, Inc., 41 B.R. 486 (Bankr.D.Vt.1984).  These decisions make clear that proof that an estate lacks equity in property sets forth at least a prima facie case that the property is of inconsequential value and benefit to the estate.  In re Paolella 79 B.R. 607 (Bankr.E.D.Pa.1987)

32.     In the instant case, Sun Coast, E-Co, Pro-Temp and Pro-Tree are non-operating entities due to their inability to satisfy their operating expenses.  They are saddled with excessive debt and have not shown any ability to generate any profit or funds for the estate.  Retaining the estate's interest in Sun Coast, E-Co, Pro-Temp and Pro-Tree only exposes the estate to additional potential liability that could negatively impact the funds available to pay unsecured creditors.

33.     The financial statements of Sun Coast, E-Co, Pro-Temp and ProTree establish a prima facie case that the property is of inconsequential value and benefit to the estate, and that abandonment is appropriate.

## CONCLUSION

34. The Trustee desires to abandon the estate's interest in Sun Coast, E-Co, ProTree, and Pro-Temp as the membership interests are burdensome to the estate and have no or inconsequential value.

Dated: July 29, 2014

Respectfully submitted,

**STEFFES, VINGIELLO & MCKENZIE, LLC**

By: /s/ Patrick S. Garrity
William E. Steffes (LBN 12426)
Patrick S. Garrity (LBN 23744)
13702 Coursey Blvd., Bldg. 3
Baton Rouge, LA 70817
Telephone: 225-751-1751
Facsimile: 225-751-1998
E-mail: pgarrity@steffeslaw.com

- and -

**WHEELER & WHEELER, PLLC**

David A. Wheeler (MS Bar No. 7126)
185 Main Street
P.O. Box 264
Biloxi, MS 39533
Telephone: (228) 374-6720
Facsimile: (228) 374-6721
E-mail: david@wheelerattys.com

**ATTORNEYS FOR THE CHAPTER 11 TRUSTEE**